IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

G.D, D.D, E.P., P.P., J.O. and
S.K., individuals,

                Plaintiffs,

v.                                                Case No.   06-2184-CM

MONARCH PLASTIC SURGERY, P.A. and
DANIEL BORTNICK, M.D.,

                Defendants.

## **MEMORANDUM AND ORDER**

       This matter comes before the court upon Plaintiffs' Motion to Compel (Doc. 30). Defendants filed a timely response to plaintiffs' motion (Doc. 37) to which plaintiffs have replied (Doc. 44). Additionally, defendants filed a Cross Motion for Protective Order (Doc. 37). Plaintiffs timely responded to defendants' cross motion (Doc. 44) and defendants have replied (Doc. 51). Therefore, the court deems these motions ripe for disposition.

**I.**      **Relevant Factual Background**

       Plaintiffs filed their complaint in the United States District Court for the District of Kansas on May 5, 2006. In their complaint, plaintiffs assert eight separate counts all of which arise from defendants alleged wrongful disclosure of plaintiffs' confidential medical information.[1] Specifically, plaintiffs allege that defendants wrongfully disclosed plaintiffs' confidential medical information stored on a computer hard drive by placing the computer on the curb of defendant Bortnick's home for trash disposal. Plaintiffs further allege that after the computer was placed on the curb, a collector removed the computer and took it to a computer

---

[1] Plaintiffs' First Amended Complaint (Doc. 2).

repair shop. Plaintiffs claim the repair shop employees were able to make the computer operable by adding a new RAM card and the collector was then able to view the files on the computer – including confidential medical files. Thereafter, it is alleged that the collector turned the computer over to KCTV 5 – a local television news station – where a story was aired regarding how defendants had allowed the computer to be placed in the trash and medical records to be recovered by the collector.

Plaintiffs presently move for an order compelling defendants to produce the computer that is the subject matter of the instant litigation.

**II.     Contentions**

Plaintiffs in their motion generally contend that they seek "to inspect, test and evaluate the operation of the computer itself."[2]   Specifically, plaintiffs contend that they are entitled to:

(1) Inspect the computer to determine its operating system and applicable software applications;
(2) "Boot up" the computer to explore how the files are kept on the computer and how they are identified;
(3) Determine what actions defendants took to protect confidential information on the computer;
(4) Determine the actions that were taken to allow confidential information to be accessed by the collector and KCTV 5;
(5) Search for all documents that concern the plaintiffs in this case;
(6) Review the "meta data" concerning each file that concerns the plaintiffs;
(7) Search the computer for deleted documents concerning the plaintiffs;
(8) Determine how the software that opens images functions;
(9) Review registries and logs in the computer's operating system to determine the people who have logged on to the computer as well as what files were opened after the computer had been discarded; and
(10) Copy "other confidential information on the computer related to other Monarch patients who are not plaintiffs in this action to show...the degree

---

[2]Plaintiffs' Motion to Compel (Doc. 30), at p. 1.

of [d]efendants' recklessness."[3]

Plaintiffs propose a procedure by which production of the computer may be affected while accommodating defendants' concerns about patient and employee privacy.[4]  Finally, plaintiffs also request that defendants produce "redacted copies of all confidential medical information concerning patients who are not plaintiffs in this action."[5]

Defendants, in their response, object to plaintiff's motion and alternatively move for a protective order prohibiting plaintiffs from obtaining the computer and/or any of the information that is privileged or confidential.  Specifically, defendants contend that plaintiffs' request for production of the computer is "overly broad, unduly burdensome, and otherwise privileged."[6]  Defendants further contend that the computer at issue contains information that is outside of the scope of plaintiffs' claims because it contains confidential medical records of patients who are not parties to this litigation and also contains "other business documents that include salary/profit sharing information."[7]  Additionally, defendants claim they have already produced all relevant information pertaining to the plaintiffs and that this request amounts to a "fishing expedition."[8]

## III.   Discussion

---

[3] Plaintiffs' Motion to Compel (Doc. 30), at p. 5-7.

[4] *See Id.* at 9-10.

[5] *Id.* at 9.

[6] Defendants' Cross Motion for Protective Order and Memorandum in Opposition to Plaintiffs' Motion to Compel (Doc. 37), at p. 2.

[7] *Id.* at 18.

[8] *Id.* at 2-3.

### A.     Certification

As an initial matter, the court considers whether plaintiffs have satisfied the good faith certification requirement. Fed. R. Civ. P. 37(a)(2)(B) requires that a motion seeking an order to compel discovery "include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure."[9] In addition, D. Kan. R. 37.2 states that "[e]very certification required by Fed. R. Civ. P. 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes shall describe with particularity the steps taken by all counsel to resolve the issues in dispute."[10]

Plaintiffs have included in their Motion to Compel a certification pursuant to Fed. R. Civ. P. 26(c) and 37. The court finds that plaintiffs' certification contains particularized facts that sufficiently describe and identify the steps taken by the parties to resolve this discovery dispute. As a result, the court finds that the certification requirement has been met as to plaintiffs' Motion to Compel.

### B.     Discovery Standards

The scope of discovery is governed by Fed. R. Civ. P. 26(b), which provides that

> [p]arties may obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

---

[9] Fed. R. Civ. P. 37(a)(2)(B).

[10] D. Kan. R. 37.2. "A 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so." *Id.*

evidence.[11]

"Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[12] The decision to grant a motion to compel is a matter of discretion for the court.[13] The court will now address plaintiffs' requests.

**C.   Plaintiffs' Motion to Compel Production of Defendants' Computer (Doc. 30).**

**1.   Whether production of the computer is proper.**

Plaintiffs request production of defendants' computer "to inspect, test and evaluate the operation of the computer itself."[14] Specifically, plaintiffs seek to:

>   (1)   Inspect the computer to determine its operating system and applicable software applications;
>   (2)   "Boot up" the computer to explore how the files are kept on the computer and how they are identified;
>   (3)   Determine what actions defendants took to protect confidential information on the computer;
>   (4)   Determine the actions that were taken to allow confidential information to be accessed by the collector and KCTV 5;
>   (5)   Search for all documents that concern the plaintiffs in this case;
>   (6)   Review the "meta data" concerning each file that concerns the plaintiffs;
>   (7)   Search the computer for deleted documents concerning the plaintiffs;
>   (8)   Determine how the software that opens images functions;
>   (9)   Review registries and logs in the computer's operating system to determine the people who have logged on to the computer as well as what files were opened after the computer had been discarded; and
>   (10)  Copy "other confidential information on the computer related to other Monarch patients who are not plaintiffs in this action to show...the degree

---

[11]Fed. R. Civ. P. 26(b)(1).

[12]*Sonnino v. Univ. of Kan. Hosp. Auth.,* 2004 U.S. Dist. LEXIS 6220, at *6 (D. Kan. Apr. 8, 2004) (quoting *Hammond v. Lowe's Home Ctrs., Inc.,* 216 F.R.D. 666, 670 (D. Kan. 2003)).

[13]*Martinez v. Schock Transfer & Warehouse Co.,* 789 F.2d 848, 850 (10th Cir. 1986).

[14]Plaintiffs' Motion to Compel (Doc. 30), at p. 1.

5

of [d]efendants' recklessness."[15]

The court will now address defendants' objections to plaintiffs' request for production.

### a. Relevancy Objections

Defendants contend that they have previously produced all responsive information contained on the computer and this motion to compel the computer is nothing more than an "unadulterated fishing expedition." Defendants further contend that any information, beyond that which has been previously produced, remaining on the computer is "beyond the permissible scope of discovery."[16] The court shall construe these statements as objections based upon relevancy.

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery."[17] When relevancy is *not* readily apparent, however, the party seeking discovery has the burden of showing the relevancy of the discovery request.[18] A request for discovery ordinarily should be allowed unless it is clear that the

---

[15]Plaintiffs' Motion to Compel (Doc. 30), at p. 5-7.

[16]Defendants' Cross Motion for Protective Order and Memorandum in Opposition to Plaintiffs' Motion to Compel (Doc. 37), at p. 12.

[17]*Gen. Elec. Capital Corp. v. Lear Corp.,* 215 F.R.D. 637, 640 (D. Kan. 2004).

[18]*Pulsecard, Inc. v. Discover Card Servs.,* 168 F.R.D. 295, 309 (D. Kan. 1996) (citing *Evello Invs. N.V. v. Printed Media Servs.,* 1995 U.S. Dist. LEXIS 4069).

information sought can have no possible bearing on the subject matter of the action.[19]

In this case, plaintiffs have requested production of the computer for numerous purposes, including but not limited to inspecting the computer itself, its hardware and software, how files are stored, *as well as* seeking specific documents.  However, defendants do not specifically respond to each type of purpose for which plaintiffs are seeking production of the computer.  Instead, defendants generally contend that plaintiffs' motion should be denied because all responsive documents have been produced previously and any additional information is beyond the scope of discovery.  Defendants further claim that plaintiffs' reason for requesting the computer is to "simply 'troll' the 'electronic pond' to eliminate any skepticism regarding production."[20]  Finally, defendants contend that this request is a "drastic discovery measure" because the computer contains information pertaining to other persons not a party to the suit and information wholly irrelevant to plaintiffs' claims, including salary/profit sharing information.

Upon a full review of plaintiffs' motion, along with defendants' response, the court finds that plaintiffs have articulated purposes that are appropriate for such a discovery request, are relevant on their face to plaintiffs' causes of action, and are likely to lead to the discovery of admissible evidence.  Specifically, the court finds the following purposes appear relevant on their face:

      (1)    Inspect the computer to determine its operating system and applicable software applications;
      (2)    "Boot up" the computer to explore how the files are kept on the computer and how they are identified;
      (3)    Determine what actions defendants took to protect confidential

---

[19]*Id.*

[20]Defendants' Opposition (Doc. 37), at p. 14.

       information on the computer;
(4) Determine the actions that were taken to allow confidential information to be accessed by the collector and KCTV 5;
(5) Search for all documents that concern the plaintiffs in this case;
(6) Review the "meta data" concerning each file that concerns the plaintiffs;
(7) Search the computer for deleted documents concerning the plaintiffs;
(8) Determine how the software that opens images functions; and
(9) Review registries and logs in the computer's operating system to determine the people who have logged on to the computer as well as what files were opened after the computer had been discarded.

Therefore, as to these purposes, the court finds that the burden falls upon defendants, as the parties resisting discovery, to demonstrate the irrelevancy of the aforementioned purposes. Upon a full review of the record, the court finds that defendants have failed to sufficiently articulate the irrelevancy of the aforementioned purposes. The court disagrees with defendants' assertion that the motion amounts to a "fishing expedition," as the court finds that the above information plaintiffs seek appears relevant to their claims.

However, the court agrees with defendants that one of plaintiffs' proposed purposes appears *ir*relevant on its face – namely, plaintiffs' contention that they are entitled to:

> Copy "other confidential information on the computer related to other Monarch patients who are not plaintiffs in this action to show...the degree of [d]efendants' recklessness."[21]

Since the court finds that any confidential information on the computer related to *non-parties* to this action appears irrelevant on its face, the burden then is upon plaintiffs to demonstrate the relevancy of such a request. Plaintiffs in their motion state only that they are entitled to this confidential information on the computer "to show, inter alia, the degree of

---

[21]Plaintiffs' Motion to Compel (Doc. 30), at p. 7.

[d]efendants' recklessness."[22]  The court disagrees.  Rather, the court finds this purpose to be an impermissible basis for discovery of these non-party confidential medical records.  Defendants acknowledge their business computer contained medical information concerning patients in addition to the six plaintiffs in this case.  The level of care (or lack thereof) taken by the defendants to protect confidential patient information would appear to be the appropriate measure of any alleged "recklessness" on the part of the defendants.  Surely, an evaluation of such conduct does not depend upon how many patients' records were stored on the subject computer.  Even if recklessness were to be measured by the number of patients whose records potentially were disclosed, it would be that fact – not the specific confidential medical information of non-parties – which would be of any value to the trier of fact.  And, under those circumstances, such information could be obtained through less obtrusive means, such as by the use of interrogatories, which would not require the disclosure of the identity of those patients or their confidential medical records.

Plaintiffs admit in their own motion to compel that they seek "*confidential* information on the computer related to other Monarch patients who are not plaintiffs in this action."[23]  Because plaintiffs specifically acknowledge that the information they seek is confidential non-party medical records and because the medical records and/or health conditions of non-party individuals are not at issue in this case, the court concludes that the request for this specific information is not reasonably calculated to lead to the discovery of admissible evidence regarding any issue in this case.

---

[22]*Id.*

[23]Plaintiffs Motion to Compel (Doc. 30), at p.7 (emphasis added).

Plaintiffs attempt to overcome these difficulties by contending that a physician-patient privilege and/or the protections afforded by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936, do not apply "when the personal identifiers are removed from the patient health information."[24]  The court disagrees.  The U.S. Department of Health and Human Services has set forth specific regulations, contained in 45 C.F.R. § 164.512(e) *et. seq.*, which outline the specific procedures for obtaining protected health information for use in litigation.  Pursuant to these regulations, plaintiffs may not obtain confidential medical records of non-party patients for the purpose of litigation without either (a) the non-parties' consent or demonstrating that a reasonably effort was made to ensure the non-parties have been given notice of any request,[25] or (b) through a court order.[26]  Since it does not appear that plaintiffs have obtained the non-parties' consent for disclosure of these medical records or made reasonable efforts to notify the non-parties of their request to do so, plaintiffs rely solely on the court's authority to order disclosure.

As discussed above, the court is unwilling to issue an order granting plaintiffs' request to access confidential medical records of *non-party* patients stored on the computer because such records are irrelevant to plaintiffs' claims and the production of such records is not reasonably calculated to lead to the discovery of admissible evidence regarding plaintiffs' claims.  As a result, plaintiffs' suggestion that it be allowed access to non-party patients' medical records in a form redacting personal identifiers of the non-parties is not persuasive.  Such documents in

---

[24] Plaintiffs' Reply Brief in Support of Motion to Compel (Doc. 44), at p. 19.

[25] *See* 45 C.F.R. § 164.512(e)(1)(ii)(B).

[26] *See* 45 C.F.R. § 164.512(e)(1)(i).

10

either form simply are irrelevant to plaintiffs' claims. The court will deny this request for production insofar as it seeks medical records of non-party patients.

### b. Overbreadth Objections

Defendants further object to plaintiffs' motion because it is "overly broad and seeks other business documents and materials that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this case."[27] A party objecting to discovery on the basis of overbreadth must support its objection, unless the request appears overly broad on its face.[28] The court finds that this request does appear overly broad on its face. The plaintiffs are requesting production of the computer and disclosure of *all* records stored on the computer redacted solely to exclude personal identifiers regarding non-party patients. The court finds no basis for plaintiffs' contention that other business records concerning defendant Monarch's employees including payroll, personnel, and profit sharing information have relevance to the issues raised by this case. Such requests are not reasonably calculated to lead to the discovery of admissible evidence and such records need not be disclosed. Defendants have carried their burden to substantiate this objection and the court therefore sustains this objection as it relates to discovery of such material.

### c. Vague/Unduly Burdensome Objections

Finally, defendants contend that plaintiffs' request for production of the computer is vague and unduly burdensome. A party objecting to discovery on the basis that it is vague or

---

[27]Defendants' Cross Motion for Protective Order and Memorandum in Opposition to Plaintiffs' Motion to Compel (Doc. 37), at p. 18.

[28]*Etienne v. Wolverine Tube Inc.,* 185 F.R.D. 653, 656 (D. Kan. 1999).

unduly burdensome has the burden to support its objection.[29] Defendants merely assert these objections and do not provide support for these objections. The court "looks with disfavor on conclusory or boilerplate objections"[30] and, therefore, overrules these objections to plaintiffs' request for production.

### d. Procedure for Disclosure of Defendants' Computer

The court, upon a full review of the record, concludes that plaintiffs' Motion to Compel Production of Computer (Doc. 30) should be granted as to all of plaintiffs' stated purposes except that which seeks files or records related to non-parties and defendants' employees. Plaintiffs have proposed a procedure by which production of the computer may be accomplished for plaintiffs' stated purposes and at the same time maintain defendants' patients' and employees' privacy.[31] Upon reviewing plaintiffs' proposed procedure, the court is inclined to adopt the procedure in part and revise such procedure in part.

Because plaintiffs' request seeks to recover (1) information regarding defendants' computer's hardware, software, and operating system as well as (2) records contained on defendants' computer, the court shall set forth two distinct procedures for production of the computer – one procedure for reviewing the computer's hardware, software, and operating system (i.e. "PROCEDURE I"), and a separate procedure for reviewing information stored on defendants' computer (i.e. "PROCEDURE II").

---

[29]*W. Res., Inc. v. Union Pac. R.R. Co.,* 2002 U.S. Dist. LEXIS 1004 (D. Kan. Jan. 21, 2002) (citing *McCoo v. Denny's Inc.,* 192 F.R.D. 675, 694 (D. Kan. Apr. 18, 2000)); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 209 F.R.D. 208, 213 (D. Kan. 2002).

[30]*Sonnino v. Univ. of Kan. Hosp. Auth.,* 221 F.R.D. 661, 670 (D. Kan. 2004).

[31]Plaintiff's Motion to Compel Production of Computer (Doc. 30), at p. 9-10.

Therefore, the court, having found production of the computer to be proper, hereby adopts the following procedures:[32]

           **i.    Procedure for reviewing defendants' computer's hardware, software, and operating system. (Procedure I)**

PROCEDURE I

    A.    This procedure shall apply to the following stated purposes of plaintiffs as outlined in their Motion to Compel (Doc. 30):

        (1)    Inspect the computer to determine its operating system and applicable software applications;

        (2)    [Inspect] the computer to explore how the files are kept on the computer and how they are identified;

        (3)    Determine what actions defendants took to protect confidential information on the computer;

        (4)    Determine the actions that were taken to allow confidential information to be accessed by the collector and KCTV 5;

        (8)    Determine how the software that opens images functions; and

        (9)    Review registries and logs in the computer's operating system to determine, if possible, the people who have logged on to the computer as well as what files were opened after the computer had been discarded;

    B.    Procedure

        (1)    The court hereby appoints Mark Johnson, of Grant Thornton LLP, as an expert ("Expert") to conduct an examination of defendants' computer.[33] Mr. Johnson's address is 1201 Walnut Street Suite 1000, Kansas City, MO, 64106, and his contact number is 816-412-2553;

        (2)    The parties shall submit a Protective Order for the court's approval, which will subsequently be entered, signed by the Expert;

---

[32] *See, e.g., Antioch Co. v. Scrapbook Borders, Inc.,* 210 F.R.D. 645 (D. Minn. 2002)(granting plaintiff's motion to compel and setting forth a particularized procedure for resurrecting deleted data on defendant's computer).

[33] *See* Fed. R. Evid. 706.

(3) Once a Protective Order is entered, defendants shall make available to the Expert, at defendants' place of business, and at a mutually agreeable time, the computer at issue in this litigation;

(4) The Expert will use its best efforts to avoid unnecessarily disrupting the normal business activities or business operations of the defendants while inspecting defendants' computer;

(5) The computer at all times shall be maintained on defendants' premises;

(6) The only persons authorized to inspect or otherwise handle such computer shall be the Expert and employees of the Expert assigned to this project;

(7) No employee of plaintiffs, plaintiffs' counsel, or plaintiffs, will inspect or otherwise handle the computer produced;

(8) The Expert will maintain all information in the strictest confidence;

(9) Once the computer is produced, the Expert shall attempt to recover a "mirror image," or forensic image, of the hard drive, in the presence of only the defendants or defendants' counsel, and at the defendants' convenience.  After a forensic copy is made, one copy shall be transmitted to the court and one copy shall be transmitted to the defendants;

(10) On such copy, the Expert shall identify the computer's operating system and software applications related to the creation, storage, and viewing of files – including images – on the computer;

(11) The Expert shall identify the internal hardware components of the computer, including the existing RAM card in the computer, and any other matters that the Expert deems relevant;

(12) The Expert shall then inspect the computer to determine its operating system and all software applications installed on the computer;

(13) The Expert shall inspect the computer and identify how individual files are organized on the computer and how files may be identified;

(14) The Expert shall inspect the computer to determine what actions defendants took to protect confidential information on the computer;

(15) The Expert shall inspect the computer to determine what, if any, actions were taken that specifically allowed the collector and KCTV to access confidential information on the computer;

    (16) The Expert shall inspect the computer to determine how the software that opens image files functions;
    (17) If the file system permits, the Expert shall review the computer's registries and logs in the computer's operating system to determine the people who have logged on to the computer after it was discarded as well as what files were opened after the computer had been discarded; and
    (18) The Expert shall provide a summary of the above information to plaintiffs and defendants.

      **ii. Procedure for reviewing information stored on defendants' computer. (Procedure II)**

PROCEDURE II

  A. This procedure shall apply to the following stated purposes of plaintiffs:

    (5) Search for all documents that concern the plaintiffs in this case;
    (6) Review the "meta data" concerning each file that concerns the plaintiffs; and
    (7) Search the computer for deleted documents concerning the plaintiffs.

  B. Procedure

    (1) This procedure incorporates by reference steps (1) through (9) of Procedure I.
    (2) Defendants shall review such mirror image copy in collaboration with the Expert, and shall produce to plaintiffs all responsive documents plaintiffs seek in their motion to compel (Doc. 30) for which the court has granted production pursuant to this Memorandum & Order. Specifically, defendants shall provide to plaintiffs in hard-copy format:
      a. All documents that concern plaintiffs in this case;
      b. All "meta data" related to the documents that concern plaintiffs in this case; and
      c. All recovered deleted documents concerning the plaintiffs in this case.
    (3) In addition to the aforementioned responsive documents, defendants shall also provide a privilege log to plaintiffs, which describes the nature of any privileged documents or

                communications in a manner that, without revealing information that is privileged or protected, will enable plaintiffs to assess the applicability of the privilege or protection claimed;

(4) Defendants shall forward a copy of the privilege log to the court for potential *in camera* review;

(5) Once plaintiffs have reviewed the documents produced by defendants, as well as the privilege log, if the plaintiffs raise a dispute as to any of the documents, by providing a cogent basis for doubting the claim of privilege, or for believing that there are further relevant documents, the court will conduct an *in camera* review, limited to the issues raised.

These procedures will govern the recovery of information from defendants' computer unless and until modified by a court of competent jurisdiction. To that extent, the court shall grant plaintiffs' Motion to Compel (Doc. 30). However, the court notes that ordering the above procedures will not in any way preclude the parties from retaining their own experts to evaluate the information and/or reports generated as a result of this order.

## 2. Whether production of redacted hard copies of Confidential Medical Records of non-party patients is proper.

In addition to the computer, plaintiffs also seek in their Motion to Compel (Doc. 30) "redacted copies of all confidential medical information concerning patients who are not plaintiffs in this action."[34] Defendants contend that plaintiffs' motion should be denied, because this information is both irrelevant to plaintiffs' causes of action as well as protected by the physician-patient privilege set forth in K.S.A. 60-427(b).[35]

Upon reviewing plaintiffs' motion, the court finds that this request appears irrelevant on

---

[34] Plaintiffs' Motion to Compel (Doc. 30), at p. 9.

[35] The court will only address the relevancy issue in this section.

16

its face. Plaintiffs' causes of action pertain to the allegedly improper disclosure of plaintiffs' confidential medical information. It is the court's view that medical records of non-party patients are irrelevant to this cause of action. Because the requested discovery appears irrelevant on its face, plaintiffs as the moving parties must bear the burden of showing the relevancy of the requested documents.[36]

The only explanation that plaintiffs offer regarding the relevancy of this request is that plaintiffs are entitled to show "the degree of defendants' recklessness."[37] This, however, is not a proper basis to compel the production of this type of information. Because plaintiffs have failed to meet their burden to demonstrate the relevancy of their request, the court will therefore deny plaintiffs request for production of redacted hard copies of non-party patient medical records.

### D. Defendants' Cross-Motion for Protective Order (Doc. 37).

Defendants request the court enter a protective order in its favor pursuant to Fed. R. Civ. P. 26(c) protecting defendants from either having to produce the computer at issue for forensic testing or mirror imaging or for other similar purposes that would otherwise involve disclosure of privileged and confidential information.[38] Plaintiffs are opposed to defendants' motion for protective order.

Because the court has already concluded that it will order production of the computer subject to the conditions and procedures set forth in this order, the court finds that a protective

---

[36]*Pulsecard, Inc. v. Discover Card Servs.,* 168 F.R.D. 295, 309 (D. Kan. 1996) (citing *Evello Invs. N.V. v. Printed Media Servs.,* 1995 U.S. Dist. LEXIS 4069).

[37]Plaintiffs' Motion to Compel (Doc. 30), at p. 7.

[38]Defendants' Cross Motion for Protective Order and Memorandum in Opposition to Plaintiffs' Motion to Compel (Doc. 37), at p. 1.

17

order of the type defendants request is inappropriate and will be denied in part. However, the court will grant defendants' Motion for Protective Order to the extent that any *non-party* patient medical records and/or employee records which are contained on the defendants' computer shall remain confidential and not otherwise discoverable.

### E.  Sanctions

Finally, Federal Rule of Civil Procedure 37(a)(4)(A) provides:

> If a motion to compel is granted . . , the court shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(C) "allows a court to impose sanctions where, as here, a motion to compel is granted in part and denied in part. Under that rule, the court *may* 'apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.'"[39] Therefore, the court will direct the plaintiffs to submit a verified accounting of its fees pertaining to the instant Motion to Compel and will direct the defendants to show cause why fees should not be assessed as a result of the instant Motion to Compel. Accordingly,

**IT IS THEREFORE ORDERED:**

(1) That Plaintiffs' Motion to Compel Production of Computer (Doc. 30) is granted in part and denied in part;

---

[39]*Stoldt v. Centurion Indus.,* No. 03-2634, 2005 U.S. Dist. LEXIS 2343, at *26 (D. Kan. 2006) (quoting Fed. R. Civ. P. 37(a)(4)(C)).

(2) Defendants' Cross Motion for Protective Order (Doc. 37) is granted in part and denied in part;

(3) Production of defendants' computer shall be effected in full compliance with the court's procedures, outlined on pages 13 to 16 of this order;

(4) The court, pursuant to Fed. R. Evid. 706, hereby appoints Mark Johnson of Grant Thornton, LLP as Expert to conduct the aforementioned examination of defendants' computer;

(5) Plaintiffs shall collectively pay one-half of Mr. Johnson's services associated with production and inspection of defendants' computer and preparation of his report regarding his findings;

(6) Defendants shall collectively pay one-half of Mr. Johnson's services associated with production and inspection of defendants' computer and preparation of his report regarding his findings;

(7) Plaintiffs shall submit to the court, by **February 2, 2007**, a verified accounting of the reasonable fees and expenses (by date, time, category, and rate) for which they seek recovery as a result of the instant Motion to Compel;

(8) Defendants' counsel shall **SHOW CAUSE** to the court, in writing, on or before **February 9, 2007**, why defendants and/or defendants' counsel should not be taxed with plaintiffs' reasonable attorneys' fees and expenses in filing the instant Motion to Compel; and

(9) The court shall mail a copy of this Memorandum & Order to Mr. Johnson upon entry of this order.

**IT IS SO ORDERED.**

Dated this 24th day of January, 2007, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
